# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEPHEN A. OLES,

       Plaintiff,

        v.

CORDICATE IT, LLC,
CORDICATE 401(K) RETIREMENT PLAN,
MICHAEL SEAN BAIRD, and
JOSEPH REUBEN,

       Defendants.

:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION

No. _____

## **COMPLAINT**

  Plaintiff Stephen A. Oles ("Oles"), by and through his undersigned counsel, hereby files the following Complaint seeking relief under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq*. ("ERISA"):

### **Nature of This Action**

  1.  This is an action under ERISA to obtain improperly withdrawn and withheld vested benefits under an ERISA plan, to obtain appropriate equitable relief for breaches of fiduciary duties, and to obtain such further equitable relief as may be appropriate to redress and enforce the provisions of ERISA.

  2.  To the extent any individual defendant is not directly liable, that defendant is alternatively liable pursuant to ERISA because that defendant is a co-fiduciary to the Plan and, on information and belief, participated knowingly and/or had knowledge of the breaches and failed to make reasonable efforts to remedy them.

## Parties

3.      Oles is an adult individual residing at 116 Cherry Lane, Doylestown, PA 18901. Oles is a participant in defendant Cordicate IT, LLC's ("Cordicate") 401(k) plan called the Cordicate 401(k) Retirement Plan (the "Plan").

4.      The Plan is an employee benefit plan within the meaning of Section 3 of ERISA, 29 U.S.C. § 1002.

5.      Cordicate is a Pennsylvania limited liability company with its principal place of business in Montgomery County at 1000 Adams Avenue Norristown, PA 19403. Cordicate is the Plan Sponsor and Plan Administrator.

6.      Michael Sean Baird ("Baird") is an adult individual residing at 525 W. Butler Pike, Apt. #2, Ambler, PA 19002.

7.      Joseph Rueben ("Rueben") is an adult individual residing at 18437 Indian Oak Lane, Davidson, NC 28036.

8.      Baird and Rueben are the trustees of the Plan.

## Jurisdiction and Venue

9.      Oles seeks relief under the private causes of action conferred by Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1).  Therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

10.      Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C § 1132(e)(2), because: (a) the injury occurred to Oles in this district, where he lives and works; (b) the Plan was administered in this district; (c) the breaches of fiduciary duty occurred in this district; and (d) the defendants may be found in this district.

11.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a), since a substantial part of the events giving rise to the claim occurred in this district.

## Background

12.     Cordicate is in the business of providing information technology consulting services and is a reseller of equipment to businesses to assist those businesses to design, build, and operate their information assets.

13.     Cordicate was formed by Reuben and Baird in January 2001, by filing a Certificate of Organization of record with the Department of State of the Commonwealth of Pennsylvania.

14.     In 2003, Oles purchased a 10% interest in Cordicate and became a member.

15.     From 2003 to March 31, 2017, the parties' membership interest in Cordicate was as follows: Baird – 45%; Reuben – 45%; and Oles – 10%.

## The Cordicate 401(k) Retirement Plan

16.     On January 1, 2010, Cordicate adopted the Plan. A copy of the Plan is attached hereto as Exhibit A.

17.     As the Plan Administrator, Cordicate maintains power and discretion to determine all questions arising in connection with the administration of the Plan. Cordicate is a fiduciary of the Plan within the meaning of Sections 3(21)(A)(i) and (iii) of ERISA, 29 U.S.C. §§ 1002(21)(A)(i) and (iii), and a party in interest to the Plan within the meaning of Sections 3(14)(A) and (C) of ERISA, 29 U.S.C. §§ 1002(14)(A) and (C).

18.     Baird and Reuben serve as discretionary trustees of all Plan assets.  Baird and Reuben are fiduciaries of the Plan within the meaning of Sections 3(21)(A)(i) and (iii) of ERISA, 29 U.S.C. §§ 1002(21)(A)(i) and (iii), and parties in interest to the Plan within the meaning of Sections 3(14)(A) and (C) of ERISA, 29 U.S.C. §§ 1002(14)(A) and (C).

19.     On information and belief, the Paragon Alliance Group, LLC ("Paragon") is the third-party administrator of the Plan and, as such, drafted the plan document.  Paragon also

provided Oles with online access to information relating to his 401(k) account under the Plan (the "401(k) Account").

20.     As an employee, shareholder-employee, and/or owner-employee as defined in the Plan, Oles became an active participant in the Plan when it was adopted in January 2010.

21.     Pursuant to the Plan, Oles made contributions to his 401(k) Account after he became a participant in the Plan.

22.     Under ERISA and the Plan, Oles was and is always 100% vested in his 401(k) contribution amounts attributable to salary deferrals, rollover contributions, and safe harbor contributions.

23.     Under the Plan, Oles is 100% vested in employer contributions after six years of service.

24.     Oles is a participant in the Plan because he continues to have vested Plan benefits remaining in his 401(k) Account.

25.     At all relevant times, Cordicate exercised discretionary control and authority over the management of the Plan as the Plan Administrator.

26.     At all relevant times, Baird exercised discretionary control and authority over the management of the Plan, both as a trustee and on behalf of Cordicate as the Plan Administrator.

27.     At all relevant times, Rueben exercised discretionary control and authority over the management of the Plan, both as a trustee and on behalf of Cordicate as the Plan Administrator.

28.     On information and belief, at all relevant times, Baird and Rueben had signatory authority to withdraw funds from Oles's 401(k) Account.

**Efforts to "Freeze Out" Oles**

29.     Since 2003 when Oles purchased his 10% membership interest in Cordicate, until June 2016, Oles was a member of the management team and worked full-time at Cordicate to help the company grow.

30.     In 2013, Reuben ceased participating in the day-to-day operations of Cordicate. Reuben, however, maintained his 45% membership interest in Cordicate and remained a trustee of the Plan. Reuben moved to North Carolina some time in or around 2016.

31.     After Reuben's departure, the relationship between Baird and Oles deteriorated.

32.     On June 16, 2016, Baird sent Oles a "Notice of Termination of Services" letter that stated Oles was no longer welcome on Cordicate's property, should return all Cordicate material, and no longer perform any services on behalf of Cordicate.

33.     The parties are currently engaged in litigation in Pennsylvania state court relating to Oles's allegations of defendants' efforts to freeze him out of the company.

34.     Despite Baird's efforts to freeze Oles out of the company, Oles remained a 10% owner of Cordicate until March 31, 2017. In a letter dated April 3, 2017, Baird notified Oles that effective March 31, Oles was no longer a member of Cordicate because of a recent merger. The net result of the merger was that Oles, involuntarily and without prior notice, was divested of his membership interest in Cordicate in exchange for an unsecured promise to pay an arbitrarily-set amount of money in seven years.

**Improper Withdrawals from Oles's 401(k) Account**

35.     By 2016, the entirety of Oles's 401(k) Account balance was fully vested.

36.     In July 2016, Oles opened an Individual Retirement Account with Raymond James Financial, Inc. (the "IRA Account").

37.     Pursuant to Oles's request, Raymond James sent a request for Oles's 401(k) Account balance to be rolled over into Oles's IRA Account.

38.     Because the rollover was not timely processed by Cordicate, Baird, and Reuben, Oles contacted Paragon, the Plan's third-party administrator. Paragon informed Oles that the 401(k) Account could not be rolled over yet because of a "plan compliance" issue.

39.     Shortly after his discussion with Paragon, Oles went online and accessed his 401(k) Account. He learned that on July 26, 2016, after the request was made to rollover Oles's 401(k) Account funds to the IRA Account (and two weeks after the state court complaint was served on Cordicate, Baird, and Reuben), Baird made several withdrawals totaling $16,581 from Oles's 401(k) Account without Oles's knowledge or consent. The account summary identified "Mistake of Fact" as the reason for the withdrawals. Paragon informed Oles by telephone that Baird requested Oles's Employee Contributions totaling $16,581 be returned to Cordicate by check

40.     Eventually, Oles's 401(k) Account balance, minus the improperly withdrawn $16,581, was rolled over to his IRA Account.

41.     The $16,581 withdrawn from Oles's 401(k) Account has never been restored, distributed to Oles, or rolled over to his IRA Account.

**Oles's Claim for Benefits**

42.     The Plan provides for distribution of vested benefits upon termination of employment at the request of the participant.

43.     The Plan also states that claims for benefits may be filed in writing with the Plan Administrator.

44.     The Plan sets forth the claims review procedure required for a claim for benefits.  The Plan Administrator must provide notice of the disposition of the claim within ninety

days.  Any denial must set forth specifically the reasons for the denial, the pertinent provisions of the Plan, how the claimant can perfect the claim, and an explanation of the Plan's claim procedure.

45.     If claimed benefits are denied, the claimant can appeal by filing with the Plan Administrator a written request for a hearing within sixty days of receiving the written denial. The Plan Administrator must then conduct the hearing within sixty days and make a final written decision within sixty days of the appeal, which must include specific reasons for the decision and specific references to the pertinent Plan provisions on which the decision is based.  If the Plan Administrator makes a final written determination denying the benefit claim, the participant or beneficiary has 180 days of the final determination to file an action with respect to the denied claim.

46.     In addition to the Plan requirements, Cordicate was required to comply with the claim review procedures under Section 503 of ERISA, 29 U.S.C. § 1133, and the corresponding Code of Federal Regulations, 29 C.F.R. 2560.503-1, which require the Plan Administrator to provide Oles with a written notification of any adverse benefit determination that includes not only the specific reasons for the determination but also "[a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review."

47.     On September 2, 2016, Oles's counsel wrote to counsel for Cordicate, Baird and Rueben (the "Claim Letter") requesting, among other things, an explanation of the basis for withdrawing $16,581 from Oles's 401(k) Account. In the Claim Letter, Oles's counsel also made a formal claim to restore the $16,581, plus earnings, to Oles's 401(k) Account, and requested a

distribution of the full balance of the 401(k) Account to Oles.  Oles's counsel provided a snapshot of Oles's 401(k) Account statement showing the withdrawals.

48.     Despite the Claim Letter, Oles never received from Cordicate a written claim disposition, as required under the Plan and ERISA.  Cordicate also has not reversed the $16,581 withdrawal from Oles's 401(k) Account or distributed that amount to Oles as requested.

### Oles's Exhaustion of Administrative Remedies

49.     Oles's Claim Letter constitutes a proper written claim for benefits under the Plan in relation to his claim for the restoration and distribution of the $16,581 withdrawal from Oles's 401(k) Account.

50.     Cordicate, as the Plan Administrator, was required to follow the procedural rules under the Plan and ERISA governing the administration of benefits in reviewing Oles's claim for benefits.

51.     Cordicate failed to follow those procedural rules under the Plan and ERISA by failing to provide Oles a written claim disposition within ninety days setting forth the content required under the Plan and ERISA.

52.     Cordicate failed to fully and fairly review Oles's claim by never providing Oles any response to or notification of the disposition of Oles's claim for benefits.

53.     Cordicate failed to follow the claims procedures required by the Plan and ERISA and, as a result, Oles is deemed to have exhausted his administrative remedies available under the Plan and Oles is entitled to pursue remedies under ERISA.

## COUNT I
## VIOLATIONS OF SECTION 502(a)(1)(B) OF ERISA
### Oles v. the Plan and Cordicate

54.     Oles incorporates the preceding paragraphs by reference.

55.     Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132, provides that a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

56.     Pursuant to Section 502(a)(1)(B) of ERISA and the terms of the Plan, Oles is entitled to the $16,581 in vested benefits that was improperly withdrawn from his 401(k) Account.

57.     Oles is further entitled to the distribution of those improperly withdrawn amounts.

58.     As a direct and proximate cause of Cordicate's violations of ERISA, Oles lost $16,581 in vested benefits, plus earnings, in his 401(k) Account.

59.     Pursuant to Section 502(a)(1)(B) of ERISA, the Plan and Cordicate, as the Plan Administrator, are liable to Oles for $16,581, plus earnings.

60.     Oles is also entitled to attorneys' fees under Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1).

## COUNT II
## VIOLATIONS OF ERISA FOR FIDUCIARY BREACHES
### Oles v. Cordicate, Baird, and Reuben

61.     Oles incorporates the preceding paragraphs by reference.

62.     Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), provides that a civil action may be brought by a participant or beneficiary for fiduciary breaches under Section 409 of ERISA, 29 U.S.C. 1109.

63.     Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

64.     Section 404(a) of ERISA, 29 U.S.C. § 1104(a), provides that a fiduciary shall "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of…providing benefits to participants and their beneficiaries…; with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

65.     Section 406 of ERISA, 29 U.S.C. § 1106, provides that a fiduciary of an ERISA plan shall not engage in any prohibited transactions, including dealing with the assets of the plan in his own interest or for his own account under Section 406(b)(1) of ERISA, 29 U.S.C. § 1106(b)(1).

66.     Section 409(a) of ERISA, 29 U.S.C. § 1109(a), provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and

shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

67.     Cordicate, Baird, and Reuben ("Fiduciary Defendants") improperly withdrew vested amounts from Oles's 401(k) Account and are holding those monies hostage.

68.     The Fiduciary Defendants breached their fiduciary obligations by withdrawing $16,581 from Oles's 401(k) Account for an impermissible and improper purpose for their own benefit, in violation of Section 404(a) of ERISA, 29 U.S.C. § 1104(a).

69.     The Fiduciary Defendants engaged in a prohibited transaction by withdrawing $16,581 from Oles's 401(k) Account for an impermissible and improper purpose and for their own benefit, in violation of Section 406 of ERISA, 29 U.S.C. § 1106.

70.     As a direct and proximate result of the Fiduciary Defendants' violations of ERISA, Oles lost $16,581, plus earnings, in vested benefits.

71.     The Fiduciary Defendants are liable for Oles's losses.

72.     Oles seeks appropriate equitable relief for the Fiduciary Defendants' improper withdrawal of $16,581, plus earnings, from Oles's 401(k) Account.

73.     Oles also seeks to enjoin the Fiduciary Defendants from continuing their violations.

74.     Oles is also entitled to attorneys' fees under Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1).

## COUNT III
## LIABILITY FOR BREACH OF CO-FIDUCIARY
### Oles v. Cordicate, Baird, and Reuben

75.     Oles incorporates the preceding paragraphs by reference.

76.     Under Section 405 of ERISA, 29 U.S.C. § 1105, a fiduciary may be liable for a breach of fiduciary responsibility of another fiduciary.

77.     Reuben, to the extent he is not directly liable for a fiduciary breach, is liable for breach of his co-fiduciaries Cordicate and/or Baird because he, on information and belief, (1) participated knowingly in, or knowingly undertook to conceal, an act or omission of Cordicate and/or Baird, knowing such act or omission is a breach; (2) enabled Cordicate and/or Baird to commit a breach by failing to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary; and/or (3) has knowledge of the breach and failed to make reasonable efforts under the circumstances to remedy the breach. Reuben, as a co-trustee, also failed to manage the assets of the Plan and failed to use reasonable care to prevent the co-trustee, Baird, from committing a breach.

78.     To the extent Cordicate and/or Baird are not liable due to their own fiduciary breaches, each is liable for a breach of the other's fiduciary duties because, on information and belief, Cordicate and Baird (1) participated knowingly in, or knowingly undertook to conceal, an act or omission of the other, knowing such act or omission is a breach; (2) enabled the other to commit a breach by failing to comply with section 1104(a)(1) of this title in the administration of its/his specific responsibilities which give rise to his status as a fiduciary; and/or (3) has knowledge of the breach and failed to make reasonable efforts under the circumstances to remedy the breach.

79.     As a direct and proximate result of the ERISA violations of the Fiduciary Defendants directly and/or as co-fiduciaries, Oles lost $16,581 and access to the vested benefits in his 401(k) Account.

80.     As Plan co-fiduciaries, the Fiduciary Defendants are liable for Oles's losses.

81.     Oles seeks appropriate equitable relief for the Fiduciary Defendants' improper withdrawal of $16,581, plus earnings, from Oles's 401(k) Account.

82.     Oles is also entitled to attorneys' fees under Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1).

WHEREFORE, Oles prays for relief as follows:

1.     Declare that Cordicate improperly withdrew and denied the return and distribution of Oles's vested benefits under ERISA;

2.     Declare that Cordicate violated the claim procedure and review provisions under the Plan and ERISA;

3.     Declare that the Fiduciary Defendants breached their fiduciary duties under ERISA;

4.     Declare that the Fiduciary Defendants violated ERISA's prohibited transactions provisions;

5.     Declare that the Fiduciary Defendants, to the extent any are not liable directly, are liable as co-fiduciaries under ERISA.

6.     Issue an order compelling the Plan and Cordicate to restore to Oles's 401(k) Account the $16,581 in benefits owed to Oles under the Plan, plus earnings.

7.     Issue an order compelling the defendants to distribute to Oles the entirety of the restored balance of his 401(k) Account.

8.     Enjoin the defendants collectively from any further violations of their ERISA fiduciary responsibilities, obligation, and duties;

9.     Award Oles his attorneys' fees and costs pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and

10.   Award such other and further relief as the Court deems just and equitable.


Dated:  May 30, 2017                    Respectfully submitted,

                                        **FOX ROTHSCHILD LLP**


                              BY:   s/ *Andrew W. Bonekemper*
                                    Randal S. White, Esquire (64020)
                                    rwhite@foxrothschild.com
                                    Andrew W. Bonekemper, Esquire (84313)
                                    abonekemper@foxrothschild.com
                                    10 Sentry Parkway, Suite 200
                                    P.O. Box 3001
                                    Blue Bell, PA  19422-3001
                                    Tel:  (610) 397-6500
                                    Fax:  (610) 397-0450

                                    *Attorneys for Plaintiff,*
                                    *Stephen A. Oles*